IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| SADIE MAE HIBEN, | ) |
| Plaintiff, | ) ) ) |
| vs. | ) Civil Action No. 21-1245 ) |
| KILOLO KIJAKAZI, *Acting Commissioner of Social Security*, | ) ) ) ) |
| Defendant. | |

ORDER

AND NOW, this 8th day of November 2022, the Court has considered the parties' summary judgment motions and will order judgment in Defendant's favor except as to costs.[1] The Administrative Law Judge's ("ALJ") decision denying Plaintiff's applications for disability insurance benefits ("DIB") and supplemental security income ("SSI") under Title II of the Social Security Act ("Act"), 42 U.S.C. § 401 *et seq.*, and Title XVI of the Act, 42 U.S.C. § 1381 *et seq.*, respectively, is supported by substantial evidence. Accordingly, it will be affirmed. *Biestek v. Berryhill*, 139 S. Ct. 1148, 1152 (2019).[2]

---

[1]    Defendant has asked not only for a favorable determination of her summary judgment motion, but also that costs be taxed against Plaintiff. (Doc. No. 13, pg. 2). Because the latter request is not supported by argument in her accompanying brief, the Court's Order excludes an award of costs. *Pa. Dep't of Pub. Welfare v. U.S. Dep't of Health & Hum. Servs.*, 101 F.3d 939, 945 (3d Cir. 1996).

[2]    Plaintiff has raised at least eight arguments for an order reversing the ALJ's decision and awarding benefits or, alternatively, for remand of this matter for further administrative proceedings. Due to the numerosity of Plaintiff's arguments, the Court will not summarize them here. The decision denying Plaintiff's applications for benefits is subject to substantial evidence review. 42 U.S.C. § 405(g); *Biestek*, 139 S. Ct. at 1152. Pursuant to this standard, "a court looks to an existing administrative record and asks whether it contains 'sufficient evidence' to support the agency's factual determinations." *Biestek*, 139 S. Ct. at 1154 (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). The amount of evidence that is required is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (quoting *Consolidated Edison*, 305 U.S. at 229). The standard is deferential and reviewing

---

"[c]ourts are not permitted to re-weigh the evidence." *Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 359 (3d Cir. 2011).

The Court first addresses Plaintiff's argument that she was "deprived . . . of a valid administrative adjudicatory process" because the ALJ's authority was delegated by former Commissioner Andrew Saul who was unconstitutionally protected from removal from that office. (Doc. No. 12, pgs. 26—29). In *Candusso v. Kijakazi*, this Court acknowledged that "[t]he removal-restriction provision in [42 U.S.C. §] 902(a)(3) does appear to be an unconstitutional restriction of the President's power to remove executive officers." No. CV 21-437, —— F.Supp.3d ——, 2022 WL 3447306, at *2 (W.D. Pa. Aug. 17, 2022) (explaining how courts have applied *Seila Law LLC v. Consumer Financial Protection Bureau*, —— U.S. ——, 140 S. Ct. 2183 (2020), and *Collins v. Yellen*, —— U.S. ——, 141 S. Ct. 1761 (2021), to similar challenges to the Commissioner of Social Security's authority). However, the Court therein explained that the unconstitutional removal restriction would only justify relief if the "challenger" could show that this provision caused "compensable harm." *Id.* at *3 (quoting *Collins*, 141 S. Ct. at 1788—89). In this matter, Plaintiff has not persuasively argued that the removal restriction provision caused her actual harm. Her alleged harm is that she was deprived of "a valid administrative adjudicatory process" and that her claims were decided according to "regulations and policies promulgated by Mr. Saul when [he] had no constitutional authority to issue those rules" (Doc. No. 12, pg. 27), but Plaintiff has not specified the regulations/policies/ "legal standard[s]" to which she has alluded. (*Id.*). Nor has Plaintiff "explained to the Court how the adjudication or outcome of her case would have been different if only" then-Commissioner Saul had been removed from the office of the Commissioner earlier. *Candusso*, 2022 WL 3447306, at *5. Thus, Plaintiff's constitutional challenge fails.

The Court next addresses what Plaintiff has alleged are numerous errors the ALJ made at steps three, four, and five of the five-step evaluation that ALJs use to determine disability. At step three ALJs ask whether a claimant has an impairment or combination thereof that meets the criteria for a presumptively disabling impairment. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If the claimant does not have such an impairment, the ALJ must assess the claimant's remaining work ability, *i.e.*, his or her residual functional capacity ("RFC") which is used to determine whether the claimant can return to past work at step four. *Id.* §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). If the claimant cannot return to past work, the ALJ moves to step five and asks whether the claimant's RFC and other vocational factors permit adjustment to other work that is adequately available in the national economy. *Id.* §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). At this final step, "the Commissioner bears the burden of establishing the existence of other available work that the claimant is capable of performing." *Zirnsak v. Colvin*, 777 F.3d 607, 612 (3d Cir. 2014).

In the underlying decision, the ALJ found that Plaintiff's impairments did not meet or equal the criteria for any presumptively disabling impairment, including Listing 11.02 (Epilepsy) and a handful of mental listings (12.02, 12.04, 12.05, and 12.06). Plaintiff has argued that the ALJ's step-three determination is not supported by substantial evidence because the ALJ (1) failed to consider her focal seizures, (2) failed to consider certain evidence showing she experienced seizures as frequently as one-to-two times per month, and (3) ignored Dr. Nancy

Kunsak's marked limitations opinions. Contrary to Plaintiff's argument that the ALJ failed to consider her focal seizures, the ALJ specifically evaluated Plaintiff's "combination of complex partial seizures, generalized tonic-clonic seizures, and non-epileptic seizures" at step three. (R. 847). Partial seizures are also known as focal seizures. *Types of Seizures*, CDC, https://www.cdc.gov/epilepsy/about/types-of-seizures.htm (last visited Nov. 3, 2022). Therefore, Plaintiff's argument appears to be meritless. And even if the ALJ had erred in failing to specifically acknowledge evidence referring to "focal seizures" (*see e.g.*, R. 1120) at step three, such an error is harmless because the reason Plaintiff's impairments did not meet the criteria for Listing 11.02 was that her seizures—regardless of type—were too infrequent. (R. 847—48).

This brings the Court to Plaintiff's argument that the ALJ failed to consider relevant evidence showing Plaintiff had seizures with adequate frequency for the listing. Plaintiff's argument in this regard is that the ALJ overlooked a notation in Dr. Kara Wyant's records that Plaintiff had seizures as often as one-to-two times per month. Such frequency could meet the criteria for Listing 11.02 wherein the minimum frequency depends on the type of seizure in question, *e.g.*, for generalized tonic-clonic seizures (absent marked limitation(s)) the minimum frequency is one/month for three consecutive months, whereas the minimum for dyscognitive seizures (absent marked limitation(s)) is one/week for three consecutive months. 20 C.F.R. Pt. 404, Subpt. P, App. 1, §§ 11.02(A)—(B). Dr. Wyant's records contain a notation that Plaintiff "continued to have seizures/spells which occurred about 1-2 times per month" after Plaintiff started having "seizures/spells" somewhat regularly at age fifteen. (R. 457). However, this notation is found in a summation of Plaintiff's history that appears to be based on Plaintiff's own accounting of that history. (R. 457—58 ). Evidence that merely recounts a claimant's subjective representation of her illness may be disregarded when the ALJ elsewhere considers the claimant's complaints. *See Morris v. Barnhart*, 78 Fed. Appx. 820, 824—25 (3d Cir. 2003) (explaining that "the memorialization of a claimant's subjective statements in a medical report does not elevate those statements to a medical opinion").

In her decision, the ALJ considered Plaintiff's representation of the frequency of her seizures, that is, that she experienced seizures "every two or three months." (R. 851, 872). She also considered Plaintiff's neurologist's note that Plaintiff "continue[d] to have several convulsive seizures and a few non-convulsive seizures per year." (R. 852). Accordingly, there is evidence in the record that supports the ALJ's finding as to seizure frequency. *See Jones v. Barnhart*, 364 F.3d 501, 505 (3d Cir. 2004) (explaining that the courts read an ALJ's decision "as a whole"). Not only that, but Dr. Wyant's notation predates the relevant period of Plaintiff's alleged disability onset. Plaintiff applied for benefits on July 9, 2015 (R. 297, 304) and alleged disability onset as of July 1, 2014. (R. 844). The record in question is dated March 18, 2014. (R. 457). Because the record the ALJ is alleged to have overlooked predates Plaintiff's alleged disability onset and reflects Plaintiff's subjective representations, and further because the ALJ supported her frequency finding with significant evidence, the Court finds no error or critical deficiency of evidence in the ALJ's evaluation of the frequency of Plaintiff's seizures.

Having found that the ALJ's finding as to seizure frequency is adequately supported, the Court need only briefly address Plaintiff's argument that the ALJ should have relied on Dr. Kunsak's marked limitations opinions. For a claimant who has generalized tonic-clonic seizures

"at least once every 2 months for at least 4 consecutive months" or dyscognitive seizures "at least once every 2 weeks for at least 3 consecutive months"—"despite adherence to prescribed treatment"—that the claimant may be disabled pursuant to the epilepsy listing if they also have "a marked limitation" in one of five areas. 20 C.F.R. Pt. 404, Subpt. P, App. 1, §§ 11.02(C), (D). Those areas are physical functioning; understanding, remembering, or applying information; interacting with others; concentrating, persisting, or maintaining pace; or adapting or managing oneself. *Id.* The ALJ found only moderate limitations in the latter four areas, and Plaintiff has not raised the first (physical functioning). (R. 848—49). The ALJ considered Dr. Kunsak's consultative examination toward those findings (*id.*), but later in the decision explained that Dr. Kunsak's opinions received only "little weight" because—among other things—her conclusions were inconsistent with Plaintiff's "largely unremarkable" mental status examination. (R. 853). The Court finds that the ALJ thus adequately explained why she did not adopt Dr. Kunsak's opinions and discerns no error in the ALJ's finding of only moderate limitations at step three.

Once the ALJ found that Plaintiff did not meet or equal the criteria for a listed impairment, she formulated Plaintiff's RFC to include light work with significant limitations, such that Plaintiff "can never climb ladders, ropes, or scaffolds;" "can have no exposure to hazards like unprotected heights or moving machinery;" "can understand, remember, and carry out simple instructions;" and "make simple work-related decisions," among other limitations. (R. 850). Plaintiff has argued that the ALJ erred in her consideration of the evidence toward her RFC because she (1) failed to consider focal seizures toward the RFC determination, (2) did not consider/discuss records from Mutual Aid Ambulance Service, (3) downplayed evidence from emergency department visits/hospitalizations, (4) erred in her consideration of neurologist Dr. Anto Bagic's findings and opinions, and (5) failed to include off-task time in the RFC.

Contrary to Plaintiff's argument that the ALJ failed to consider her focal seizures toward the RFC, the ALJ explicitly discussed Plaintiff's hospitalization where she had "another abnormal EMG consistent with bitemporal epilepsy resulting in focal seizures with altered awareness." (R. 852). Regarding her next argument—that the ALJ failed to address records from Mutual Aid Ambulance Service—Plaintiff has not developed this argument; therefore, she has "provide[d the Court] with little assistance in evaluating" it. *Com. of Pa. Dep't of Pub. Welfare*, 101 F.3d at 945. Looking at the Mutual Aid Ambulance Service records, they seem to merely reinforce other records that the ALJ did consider concerning Plaintiff's seizures. (R. 378—404, 1483—1507). Many of these trip records are probative of what Plaintiff's seizures felt like, *e.g.*, "pt. states she had a seizure this morning . . . that during the seizure her head struck the wall beside her bed." (R. 400 (documenting Mutual Aid Ambulance Service call on January 5, 2015)). Importantly, the ALJ considered evidence like Plaintiff's testimony that likewise shed light on how she experienced seizures. (R. 851). ALJs are not required "to make reference to every relevant treatment note" in evidence, *Fargnoli v. Massanari*, 247 F.3d 34, 42 (3d Cir. 2001), especially when multiple exhibits are probative of the same facts. And where Plaintiff has not persuasively argued that these Mutual Aid Ambulance Service records would have made a difference to the ALJ's RFC determination, the Court finds no error that would justify remand.

Plaintiff's next argument—that the ALJ "erred by downplaying Plaintiff's 2 hospital admissions . . . and her 12 hospital emergency department treatments for her seizures" (Doc. No.

4

12, pg. 4) is plainly a request to reweigh the evidence. As Defendant points out, the ALJ discussed Plaintiff's hospitalizations (R. 852) and emergency department visits (R. 847—48 (citing exhibits)). Plaintiff's argument that different conclusions should have been drawn from that evidence is unabashedly a request for this Court to weigh the evidence itself, but the Court may not reweigh the evidence. *Berry v. Sullivan*, 738 F. Supp. 942, 944 (W.D. Pa. 1990). Likewise, Plaintiff's argument that the ALJ erred in her consideration of Dr. Bagic's findings and opinions is also a request that the Court reconsider evidence to which the ALJ already dedicated thoughtful attention. Plaintiff's argument appears to stem from the fact that the ALJ considered Dr. Bagic's records as part of her consideration of the objective medical evidence (R. 851) instead of including Dr. Bagic's records in her discussion of the medical opinion evidence (R. 853). However, the Court does not find that categorization to be inappropriate.

For applications filed before March 27, 2017, medical opinions "are statements from acceptable medical sources that reflect judgments about the nature and severity of [a claimant's] impairment(s), including [her] symptoms, diagnosis and prognosis, what [she] can still do despite impairment(s), and [her] physical or mental restrictions." 20 C.F.R. §§ 404.1527(a)(1), 416.927(a)(1). Dr. Bagic did not opine as to Plaintiff's limitations and remaining abilities in the records included in Plaintiff's administrative record. In Dr. Bagic's 2017 "MEDICAL STATEMENT REGARDING SEIZURES PHYSICIANS REPORT," he provided information about the type of seizures Plaintiff suffered, how frequently they occurred, her degree of compliance with treatment, the presence of medication side effects, relevant examination findings, diagnosis, treatment, progress, complications, and prognosis. (R. 677—82). He also indicated Plaintiff might require future care or suffer cognitive impairments depending on her response to medication and whether her seizures were uncontrolled. (R. 681—82). Though Dr. Bagic was provided with a "PHYSICAL CAPACITIES EVALUATION" form to fill, the form was not completed. (R. 683). Accordingly, the Court does not fault the ALJ for excluding Dr. Bagic's records from the section of her decision where she discussed other medical opinion evidence when the ALJ paid adequate attention to Dr. Bagic's records elsewhere in the decision. *Inscho v. Comm'r of Soc. Sec.*, No. CV 17-114-J, 2018 WL 4184340, at *1 n.2 (W.D. Pa. Aug. 31, 2018) (declining to construe a doctor's "clinical findings" as medical opinion evidence).

Lastly, the Court addresses Plaintiff's argument that the ALJ erred in failing to address the vocational expert's ("VE") testimony that 15% off-task time would eliminate all possible jobs at step five of the evaluation. Plaintiff's argument in this regard is somewhat circuitous. She starts by arguing that moderate limitations of mental functioning "do not mean anything less than 20% of the time at work." (Doc. No. 12, pg. 24). She then discusses the appropriate procedure for ALJs' evaluation of mental disorders. (Doc. No. 12, pg. 24—25). After that, Plaintiff argues that certain moderate limitations correspond to specific functional limitations, *e.g.*, that a moderate limitation in concentration, persistence, or pace renders claimants unable to "meet quotas, stay alert or work at a consistent rate of speed." (Doc. No. 12, pg. 25). In the end, she argues that the ALJ's error was that she failed to include a 15% off-task time limit in Plaintiff's RFC; therefore, Plaintiff argues, the government failed to carry its burden to identify alternative work for Plaintiff because the VE testified that an individual who would be off-task 15% of the time could not find work. (Doc. No. 12, pgs. 25—26).

Therefore, IT IS HEREBY ORDERED that Plaintiff's Motion for Summary Judgment (Doc. No. 11) is DENIED and Defendant's Motion for Summary Judgment (Doc. No. 13) is GRANTED as specified above.

s/ Alan N. Bloch<br>United States District Judge

ecf:   Counsel of Record

---

This argument fails because an ALJ's presentation of certain limitation(s) to a VE in a hypothetical does not mean the ALJ must then include that limitation in the RFC.  Only "*credibly established limitations*" must be presented to the VE and included in the RFC. *Rutherford v. Barnhart*, 399 F.3d 546, 554 (3d Cir. 2005).  And the United States Court of Appeals for the Third Circuit has also explained that "findings at steps two and three," *e.g.* that a claimant is moderately limited in concentration/persistence/pace, "will not necessarily translate to the language used at steps four and five." *Hess v. Comm'r Soc. Sec.*, 931 F.3d 198, 209 (3d Cir. 2019).  Plaintiff has not identified evidence the ALJ overlooked that proved she would be off task at least 15% of the time.  Instead, she has relied on the ALJ's finding of moderate mental limitations.  But those findings do not self-evidently establish a 15% off-task time limitation, and the ALJ included other restrictions in the RFC to accommodate Plaintiff's mental limitations.  Accordingly, the Court finds no error in the ALJ's exclusion of an off-task time limitation from the RFC and reliance on the VE's testimony to find work was available to Plaintiff at step five.  For this and the foregoing reasons, the Court will affirm the underlying decision.